**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEARNEY SONIAT  LOUGHLIN** | **CIVIL ACTION** |
| **AND TERRI  B. LOUGHLIN,** | |
| **INDIVIDUALLY AND ON BEHALF OF THEIR** | |
| **MINOR CHILD SIDNEY SONIAT LOUGHLIN** | |
| | |
| **VERSUS** | **NO.  06-2339** |
| | |
| **USAA CASUALTY INSURANCE COMPANY,** | **SECTION "K"(5)** |
| **DON PISONI, CHUCK COLLINS, AND** | |
| **CHRISTOPHER SCHWARTZ** | |

## ORDER AND OPINION

Before the Court are the "Motion for Summary Judgment" filed on behalf of defendant Chuck Collins (Doc. 15) and the "Motion for Partial Summary Judgment" filed on behalf of plaintiffs Kearney Soniat Loughlin and Terri B. Loughlin (Doc. 16).  Having reviewed the pleadings, memoranda, and relevant law, the Court, for the reasons assigned, denies plaintiffs' motion for partial summary judgment and grants Chuck Collins's motion for summary judgment.

BACKGROUND

Kearney Soniat Loughlin and Terri Loughlin live in a home located at 1202-1204 State Street in New Orleans.[1] USAA Casualty Insurance Company and United Services Automobile Association (collectively "USAA") provided various insurance coverages for that property on August 29, 2005, when Hurricane Katrina struck New Orleans.   The property sustained damage as a result of Hurricane Katrina.

Following the storm, plaintiffs had a tarp placed over a damaged portion of the roof to

---

[1] The home is co-owned in indivision by Kearney Loughlin, his sister, Sydney Clarke, and his mother Regina Soniat Talton.

protect it and the house from further damage. The Loughlins filed a claim with USAA for additional living expenses, damages to the interior and exterior of the house, and damages to the contents of the house.   USAA contracted with Allcat Claims Service (Allcat) to provide independent adjusters to help adjust claims arising as a result of Hurricane Katrina.   After the Loughlins reported their claim to USAA, Allcat assigned Chuck Collins to inspect plaintiffs' home and adjust their claim. Mr. Collins inspected the property on October 12, 2005.  Because Mr. Collins did not have a ladder sufficiently tall to access the roof, he arranged for Christian Larson of CMR Construction ("CMR") to inspect the roof.  Mr. Larson and another CMR employee inspected the roof in mid-November, 2005.  Mr. Larson   prepared a diagram of the roof and took photographs of the roof.  Thereafter he submitted all of those materials to Chuck Collins along with his estimate for the cost to replace the entire roof.  Based on Mr. Larson's diagram Mr. Collins drew his own diagram of the roof and submitted his diagram together with some of the photographs taken by himself and Christian Larson and his report to USAA.  Mr. Collins did not furnish USAA with the diagram prepared by Christian Larson, the estimate prepared by Christian Larson, or all of the photographs of the roof taken by Mr. Larson.  Mr. Collins did not provide plaintiffs with a copy of the diagram drawn by Mr. Larson, Mr. Larson's estimate, or the photographs taken by Mr. Larson.

After CMR employees inspected the roof, plaintiffs noticed what they considered to be new damage to their home and concluded that the damage occurred because the protective roof tarp had been moved by CMR employees during the inspection of the roof, thereby exposing the damaged roof to rain which leaked into the house.

After being unable to reach an agreement with USAA concerning the amounts owed under their insurance policies, Kearney Loughlin, and others, filed suit against USAA Casualty Insurance

2

Company in state court.[2]  Thereafter, the Loughlins filed suit in this court against USAA Casualty Insurance Company,  and three adjusters, including Chuck Collins,  who adjusted the Loughlins' claims.  The plaintiffs allege contractual and delictual claims for damages against Chuck Collins.

Plaintiffs and Chuck Collins filed cross-motions for summary judgment on the Loughlins' claims against Chuck Collins. Mr. Collins contends that he never entered  into a contract with plaintiffs and therefore can have no contractual liability.  Additionally, Chuck Collins asserts that because plaintiffs cannot prove that he breached any duty owed to them, he is not liable to plaintiffs in tort.[3]  Plaintiffs, on the other hand,  contend that Mr. Collins is contractually liable to them for damages  because plaintiffs  are the third party beneficiaries of the contract between USAA and Allcat,  and that by making a *promesse de porte-fort* to plaintiffs Mr. Collins is obligated to pay plaintiffs the limits of the USAA policy.  Plaintiffs also contend that Mr. Collins is liable to them in tort because he breached his duty to use due care in adjusting their claim and preparing  an accurate report of plaintiffs' loss.  Plaintiffs also urge that Chuck Collins fraudulently altered Mr. Larson's diagram and fraudulently concealed Mr. Larson's photographs of the roof and his estimate to replace the roof from plaintiffs and USAA.  Additionally, plaintiffs assert that Mr. Collins is vicariously liable for the negligent acts of CMR which resulted in additional damage to their home.

---

[2] Regina Soniat Talton, Succession of Regina D. Soniat, and Sydney Loughlin Clarke were also plaintiffs in the suit.

[3] Mr. Collins points out that  in the  state court suit, Kearney Loughlin  alleged  claims identical to those alleged herein, and that the state district judge granted Mr. Collins's  motion for summary judgment dismissing those claims.  Because Mr. Collins has not specifically urged that the claims against him should be dismissed  based on the doctrines or collateral estoppel or *res judicata*, the Court will not address those doctrines in analyzing these motions.

LAW AND ANALYSIS

The Federal Rules of Civil Procedure provide that summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir.1996) (*citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.1992) *(quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), cert. denied, 506 U.S. 832 (1992)). When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. "[M]ere allegations or denials" are not sufficient to defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U .S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir.1995).

Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 588. Finally, the Court notes that substantive law determines the materiality of facts and only "facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A.  Contractual Liability

The contract between USAA and Allcat provides in pertinent part that Allcat "will provide certified property claims services adjusters ("Adjusters") to handle property claims, regardless of severity.  Adjusters will perform their duties in a professional manner at all times and will be expected to provide world class service to USAA's membership."  Plaintiffs urge that they are third party beneficiaries of that contract,  and that under that contract Chuck  Collins is liable to them for his  breach of that contract.

No extensive analysis of this claim  is necessary.  Absent evidence that Mr. Collins is a party to the  contract with USAA  which plaintiffs assert that they are the  third party beneficiaries of, Mr. Collins cannot be contractually liable to plaintiffs.  Plaintiffs have not offered any evidence establishing that Chuck Collins was a party to the contract between USAA and Allcat.  "Mere allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Plaintiffs contend that Chuck Collins is contractually liable to them because he entered into a *promesse de porte-fort* by which he obligated himself to pay plaintiffs the limits of their coverage under the USAA policy.  Article 1977 of the Louisiana Civil Code provides:

> The object of a contract may be that a third person will incur an obligation or render a performance.

> The party who promised that obligation or performance is liable for damages if the third person does not bind himself or does not perform.

Article 1977 makes it clear that a contract is a prerequisite to establish a  *promesse de porte-fort.*

5

Plaintiffs concede that they and Mr. Collins "never agreed to any contractual terms or conditions,"[4] but urge that Mr. Collins represented to plaintiffs that based upon the damages he observed that USAA would tender its policy limits to plaintiffs.   Absent an underlying contract,  a *promesse de porte-fort* cannot exist. Because there was no contract between Mr. Collins and plaintiffs, Mr. Collins cannot have contractually obligated himself to pay any amount due under the USAA insurance policies.  For the reasons stated herein above, the Court denies plaintiffs' motion for partial summary judgment on all of plaintiffs' contractual claims against Chuck Collins and grants Chuck Collins's motion for summary judgment on the contractual claims urged against him.

### B.  Tort Liability

Relying on *Barrie v. V.P. Exterminators, Inc.,* 625 So.2d 1007 (La. 1993), plaintiffs assert that Chuck Collins owed them a duty to use reasonable care in adjusting their claim. In *Barrie* the plaintiffs purchased a multiple-family dwelling for  which a termite inspector had issued a negative wood destroying insect report.   Just three days after purchasing the building, the purchasers discovered termites in the building.   The purchasers sued, among others, the individual termite inspector contending that he was negligent in misrepresenting the condition of the property in his report.    The Louisiana Supreme Court concluded that a termite inspector has "a duty to exercise reasonable care and competence in obtaining and communicating information in a termite inspection report,  so as to protect third persons for whose benefit and guidance the information was sought and supplied, and who may detrimentally rely on its contents thereby suffering pecuniary loss." *Id.* at 1008.  The court reasoned that:

The Barries were members of the limited group for whose benefit and

---

[4] Doc. 16-5, p.2, No. 3.

> guidance the report was contracted and supplied. V.P. owed the duty
> to the Barries because of its knowledge that the ultimate purpose for
> the report, and its employment, was to facilitate the sale of the
> dwelling it inspected. The Barries' expected use of the report made
> the magnitude of their loss a foreseeable probability. The obligation
> for the liability is imposed by law based upon policy considerations
> due to the tortfeasor's knowledge of the prospective use of the
> information which expands the bounds of his duty of reasonable care
> to encompass the intended user.

*Id.* at 1016.  The Louisiana Supreme Court noted that the inspector's duty of care attached because he knew that the bank for which he had prepared the report intended to transmit the report to its prospective purchasers.

Plaintiffs have not cited any cases, nor has the Court located any cases, in which *Barrie* has been cited to impose upon an insurance adjuster a general duty to properly adjust an insurance claim. The lack of such cases is not unexpected; under Louisiana law a claims adjuster is the agent of the insurer and not the insured, and therefore "does not generally owe a duty to the insured to properly adjust the claim." *Thiagarajan v. Auto Club Family Insurance*, No. 06-11225 (E.D. La. 2007) (Doc. 10, p. 2)(J. Barbier).

"Louisiana courts and federal courts applying Louisiana law have recognized that, as a general rule, no cause of action lies against an insurance adjuster for processing and handling of an insurance claim." *Edwards v. Allstate Property and Casualty Co.*, 2005 WL 221560 at *3 (E.D. La. January 27, 2005)(J. Duval).  To put it another way, "an insurance adjustor has no independent tort duty to the insured." *Motin v. Travelers Insurance* Company, 2003 WL 22533673 at *4 (E.D. La. 2003)(J. Berrigan); *see also Rosina v. Lexington Insurance Company*, 2006 WL 3141247 (E.D. La. 2006)(J. Barbier).  Nevertheless Louisiana courts have recognized that an adjuster may owe a tort duty to an insured when the adjuster has undertaken such a duty. *Id. See Pellerin v. Cashway*

7

*Pharmacy of Franklin*, *Inc.*, 396 So.2d 371, 373 (La. App. 1st Cir.  1981)("[T]here may be circumstances in which the adjuster may be said to have undertaken such a duty.  Examples may include the relative education of the parties, the diligence of the claimant in seeking the facts, the actual or apparent authority of the adjuster, the content of his promises to the claimants, misrepresentations, and fraud")(citation omitted); *Motin v. Travelers Insurance Company*, 2003 WL 22533673 (E.D. La. 2003); *See also, Alarcon  v. The Aetna Casualty & Surety Co.*, 538 So.2d 696, 699 (La. App. 5th Cir. 1989)("[U]nder some circumstances a tort duty may exist in the settlement of an insurance claim.")(citation omitted).

Plaintiffs seek to impose tort liability on Chuck Collins contending that he failed to comply with specific requirements of the contract between USAA and Allcat, i.e., failing to submit all photographs of covered damage or lack of damage and copies of all expert reports to USAA, failing to advise USAA of or forward to USAA copies of all documentation received on a loss from any party other than USAA within two business days of the adjuster receiving initial notice of the documentation, and   failing to have an "appropriate" ladder.  Plaintiffs also urge that contrary to the provisions of the USAA/Allcat contract, Mr. Collins  subcontracted the inspection of the roof to Christian Larson.  As noted herein  above Mr. Collins is  not contractually liable to plaintiffs.  The provisions of the contract between USAA and Allcat are not determinative of the duty, if any, owed by Mr. Collins to plaintiffs.  The contract provisions are relevant only to the extent that Mr. Collins affirmatively represented to plaintiffs that he would perform in a manner consistent with the obligations imposed on adjusters in the USAA/Allcat contract.  Plaintiffs have not produced any evidence that Mr. Collins told  plaintiffs that he would comply with the contractual provisions referenced above or that he represented to plaintiffs that he would forward to USAA all photographs

expert reports, and documentation received from anyone relative to their claim.  Nor is there any evidence that Mr. Collins represented to plaintiffs that he would personally inspect the roof for damage.  Considering the absence of  any evidence creating a genuine issue of material fact as to whether Chuck Collins promised plaintiffs that he would adjust their claim in a manner consistent with the obligations imposed on adjusters by the Allcat contract with USAA, plaintiffs are not entitled to summary judgment on these tort claims.  Moreover, the absence of such evidence entitled Chuck Collins to summary judgment on that claim.

Additionally, plaintiffs urge that Chuck Collins is liable for negligently adjusting their claim in the following respects:

- Failing to estimate the cost of replacing, as opposed to repairing, the roof, when Christian Larson, who inspected the roof, estimated the cost of replacing the roof;
- Failing to access a value to the attic damage;
- Failing to inspect an outbuilding;
- Failing to access a value for damage to the heating and air conditioning system, wiring, and other electrical systems; and
- Delaying the preparation of the report and submission of the report to USAA.

Plaintiffs have not offered any evidence creating a genuine issue of material fact as to whether Chuck Collins undertook any duty towards  plaintiffs with respect to the above cited alleged omissions and delay.  Absent evidence of such an affirmative undertaking, Mr. Collins cannot be liable to plaintiffs for any  negligence with respect to his adjustment of plaintiffs' insurance claims.

Plaintiffs further allege that Mr. Collins deliberately altered Christian Larson's diagram of the roof by intentionally omitting from his own drawing the two flat roof areas on the house and that Chuck Collins  fraudulently  concealed from them Mr. Larson's photographs of the flat roof areas and his damage estimate for the roof.  The Court construes these allegations as a cause of action for

delictual fraud/intentional misrepresentation.  To establish such a claim  plaintiffs must prove (a) the misrepresentation of a material fact; (b) that the misrepresentation was made with intent to deceive; and (c) the misrepresentation caused justifiable reliance with resultant injury.  *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 627 (5th Cir. 1999)(citations omitted); *Edwards v. Allstate Property and Casualty Co.,* 2005 WL 221560 at *4 (E.D. La. 2005)(J. Duval).  Plaintiffs have not submitted any evidence establishing the scienter necessary  to prevail on a claim of intentional misrepresentation or delictual fraud.  In fact, plaintiffs have not submitted any evidence even suggesting that Mr. Collins failed to include the flat roof areas in his diagram or failed to provide USAA or plaintiffs with the photographs of the flat roof areas because he had an intent to deceive. Mr. Collins has however submitted evidence indicating that he did not have an intent to deceive when he did not provide USAA with his diagram, all of Christian Larson's photographs, or Mr. Larson's estimate.  When Kearney Loughlin asked Mr. Collins during his state court deposition why he omitted the two flat roof portions of the roof in his diagram, Chuck Collins responded,"I didn't see any damage in the photos that he submitted." (Doc. 15, Exhibit 4, p. 31).  Mr. Collins also stated that he did not turn in all of the photographs to USAA because "[t]hey only want just enough photos to show the damage to the actual dwelling itself.  They don't want to be overwhelmed with a lot of photos."  (Doc. 15, Exhibit 4, p. 30).   In response to questioning, Mr. Collins indicated  that he did not turn Mr. Larson's estimate into USAA because "[i]t is not required by USAA."   (Doc. 15, Exhibit 4, p. 33).  Because plaintiffs have not provided any evidence creating a genuine issue of fact as to whether Mr. Collins had an intent to deceive, Chuck Collins is entitled to summary judgment dismissing  plaintiffs' claims for delictual fraud/intentional misrepresentation.

Both plaintiffs and Chuck Collins seek summary judgment on plaintiffs' claim that  Chuck

Collins misrepresented to them that USAA would tender the limits of their policies.  Chuck Collins has offered competent Rule 56 evidence that he did not represent to Sydney Clarke that USAA would tender its policy limits.   In his deposition given in the plaintiffs' state court suit,  Chuck Collins testified that he responded to Sydney Clarke's inquiry whether his report would result in a payment of the limits of the policy by stating that "we'll just kind of let Exactimate come up with the numbers and see because I remember in the discussion that you had brought up that you wanted the policy limits paid and I have no control over where the numbers fall, so I said we'll see where Exactimate comes up with the number and let it fall where it may."Document 15-5, Exhibit 3, p. 54. Chuck Collins also relies upon Sydney Clarke's deposition taken in the state court suit.   In her deposition Sydney Clark  was asked whether Chuck Collins "made any promises that those policy would be paid."  She responded "I don't think he made any promises that the policy limits would be paid, but he certainly said that he would, you know, action everything as quickly as possible and then get back to us." (Doc. 15-3, Exhibit 1, Deposition of Sydney Clarke, p. 95.)  Plaintiffs rely on the  affidavit of Sydney Loughlin Clarke to attempt to create a genuine issue of material fact.  Ms. Clarke's affidavit states in pertinent part that "Mr. Collins then indicated that USAA would pay the $258,500 insurance policy limit and stated that the damage he observed met or exceeded that amount." (Doc. 15, Exhibit J).

A party may not defeat a motion for summary judgment with an affidavit that impeaches, without explanation, sworn testimony.  *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996).  Neither plaintiffs nor Sydney Clarke offer an explanation for the inconsistency between Ms. Clarke's deposition and her subsequently executed affidavit.  Because Ms. Clarke's affidavit conflicts with her prior sworn testimony, that affidavit is insufficient to create genuine issue of

material fact on plaintiffs' claim of material misrepresentation concerning USAA's tender of its policy limits. Accordingly, Chuck Collins is entitled to summary judgment on this claim.

Plaintiffs also seek summary judgment on their claim that Chuck Collins is vicariously liable for the alleged negligent acts of CMR employees while they were inspecting the roof. The Loughlins contend that in mid-November, while employees of CMR were inspecting the roof they "disturbed" the protective tarp on the roof which permitted rain to fall on the hurricane damaged roof resulting in additional damage to their home. Chuck Collins also seeks summary judgment on this claim contending that plaintiffs have not cited any legal authority or produced any competent summary judgment evidence establishing that he is vicariously liable for the negligence, if any, of any CMR employee.

Under Louisiana law, "a principal is not liable for the physical torts of a *non-servant agent. Blanchard v. Ogima*, 215 So.2d 902, 906 (La. 1968). non-servant agent. The Louisiana Supreme Court cited with approval, the comment under Section 250 of the Restatement of the Law Second, Agency 2d stating:

> Thus, the principal is not liable for the negligent *physical* conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors of the principal. It is only when to the relation of principal and agent there is added that right to control *physical details* as to the manner of performance which is characteristic of the *relation of master and servant* that the person in whose service the act is done becomes subject to liability for the physical [tortious] conduct of the actor... ."

*Id.*

The only evidence of the relationship between Chuck Collins and CMR is the undisputed evidence that Mr. Collins asked Mr. Larson to inspect the roof and requested that Mr. Larson take

photographs of the roof and  prepare a diagram of the roof including measurements.  (Doc. 16, Exhibit G, pgs. 6 and 9).  The parties apparently agree that Mr. Larson was  a non-servant agent of Mr. Collins.  but disagree as to whether Mr. Collins had the right to control the physical details of the manner in which Mr. Larson was to inspect the roof.  Neither party submitted any evidence pertinent to the issue of control other than the undisputed evidence previously cited.  Therefore, the court is unable to determine whether Mr. Collins had sufficient authority to exercise control over Mr. Larson to hold Mr. Collins vicariously liable for the negligence, if any of Mr. Larson and any other CMR employee who assisted Mr. Larson in inspecting the roof.

The Court nonetheless concludes that Chuck Collins is entitled to summary judgment on plaintiffs' claim that he is vicariously liable for the negligence of the employees of CMR. Even if Mr. Collins had the right to control the physical details of how Mr. Larson was to inspect the roof, Mr. Collins is entitled to summary judgment on this claim.  Plaintiffs have not offered any evidence that Mr. Larson or the individual who assisted him during the roof inspection "disturbed" the tarp during the inspection.  Plaintiffs assert that the tarp had to be moved to take pictures of the damaged roof, but have offered no competent Rule 56 evidence  that any CMR employee moved the tarp in order to photograph the roof damage under the tarp or otherwise "disturbed" the tarp.

Plaintiffs concede that they have no direct evidence establishing that CMR personnel disturbed the tarp[5] but rely on the doctrine of *res ipsa loquitur* in urging that they are entitled to summary judgment on this claim.  "Res ipsa is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant's negligence, more

---

[5] Doc. 16, "Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment", p. 22.

probably than not, caused the injury." *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1362 (La. 1992). The doctrine of *res ipsa loquitur* should be applied "sparingly." *Id.* Generally, the doctrine of *res ipsa loquitur* applies only where three requirements are met:

> 1) the circumstances surrounding the accident are so unusual that, in the absence of other pertinent evidence, there is an inference of negligence on the part of the defendant; 2) the defendant had exclusive control over the thing causing injury; and 3) the circumstances are such that the only reasonable and fair conclusion is that the accident was due to a breach of duty on defendant's part.

*Id.*

The Court concludes that the *res ipsa loquitur* is inapplicable. The circumstances involved here are not so unusual that an inference of negligence on the part of CMR is warranted, nor did CMR employees have exclusive control over the tarp. The tarp was subject to movement and damage due to wind and animals, such as birds or squirrels. The Court notes as well that Sydney Clarke received an estimate for a roof replacement from Mortenson Roofing on November 11 and November 16, and an estimate for roof repairs from Tim Green Construction on November 3, 2005, which may indicate that employees from CMR were not the only individuals on the roof following the placement of the tarp. (Doc. 15-3, pgs. 50-53).

Nor is the only fair and reasonable conclusion that the roof leak was due to a breach of duty by CMR employees. (Doc. 15, Exhibit C, p. 173). Plaintiffs have not pinpointed the date on which they first noticed that the roof was leaking. Kearney Loughlin testified in his state court deposition that "we didn't get significant intrusion with the tarp up there, and shortly after Mr. Collins said he was going up there [on the roof] with his roofer, I started noticing water coming in." That fact that Mr. Loughlin did not notice the roof leaking prior to CMR's inspection of the roof does not negate the possibility that the tarp moved or became damaged prior to the date that CMR

14

inspected the roof.  Moreover, implicit in Mr. Loughlin's cited testimony concerning the roof leak is a  statement that there was  "intrusion" even prior to CMR's inspection of the roof.

Plaintiffs  are  not  entitled  to  summary  judgment  on  their  claim  that  Chuck  Collins  is vicariously liable for the negligent acts of CMR's employees.  Moreover, because plaintiffs have failed to produce any evidence that the CMR employees who inspected the roof "disturbed" the  tarp Chuck Collins is entitled to summary judgement on this  claim.  Accordingly,

**IT IS ORDERED** that plaintiffs' motion for partial summary judgment is DENIED;

**IT IS FURTHER ORDERED** that Chuck Collins's motion for summary judgment is GRANTED and that plaintiffs' claims against Chuck Collins are hereby dismissed with prejudice at plaintiffs' cost.

New Orleans, Louisiana, this 10th day of March, 2008.

_____

STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT JUDGE